2005 UT App 200

**STATE of Utah, Plaintiff and Appellee,**

v.

**Benjamin James MORENO, Defendant and Appellant.**

No. 20030505–CA.

Court of Appeals of Utah.

May 5, 2005.

Margaret P. Lindsay and Patrick V. Lindsay, Aldrich Nelson Weight & Esplin, Provo, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeanne B. Inouye, Asst. Attorney General, Salt Lake City, for Appellee.

Before Judges DAVIS, JACKSON, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Benjamin James Moreno appeals the trial court's sentencing order, which issued after Moreno pleaded guilty to one count of sodomy upon a child. *See* Utah Code Ann. § 76-5-403.1 (2003). We affirm.

## BACKGROUND

¶ 2 In early September 2002, Santa Clara, Utah, police officers arrested Moreno as a suspect in a child sex crime that had been reported the previous day. Moreno was alleged to have used bicycle tricks to lure a small group of young boys into the secluded yard of an abandoned house. There, he further lulled the boys into trusting him with additional tricks, and he then approached the youngest boy—a five-year-old—and grabbed him. He removed the boy's pants and placed the child's penis in his mouth. After releasing the five-year-old, Moreno grabbed the boy's eight-year-old brother, fondled him, and attempted to remove his pants. At that point, the children's father entered the yard. The father confronted Moreno, whom he had never seen before, and called 911. Moreno fled on his bicycle.

¶ 3 While talking to the police, the father and the boys described what had happened and provided a description of the assailant. Moreno was arrested the next day. During his initial interview he admitted to having been at the scene, but claimed that his contact with the children stemmed from curiosity and was not sexually motivated. Moreno was charged with a number of crimes pursu-

ant to this incident, including sodomy on a child and child kidnaping. Soon after his arrest, Moreno entered into a plea agreement with the State and he pleaded guilty to one count of sodomy on a child. *See* Utah Code Ann. § 76–5–403.1 (2003). The State dismissed all other charges.

¶ 4 The trial court directed the Department of Adult Probation and Parole (AP & P) to draft a presentence report (PSI) and to ensure that a psycho-social evaluation (PSE) was completed on Moreno prior to the sentencing hearing. As instructed, AP & P completed the PSI, wherein Moreno was described as cooperative with the PSI investigation. He was further described as being very matter-of-fact about the offense, but the investigator noted that he "seemed to minimize its seriousness," and explained that although Moreno admitted to his crimes, he demonstrated no remorse for having committed them. The PSI also discussed Moreno's self-reported history, and noted that he claimed to have been sexually and physically abused as a child, and to have been the victim of "poor parenting" and "abandonment." The PSI further explained that Moreno claimed to have been removed from his birth mother's custody at age ten and adopted by the Moreno family, and that Moreno had been arrested and adjudicated as a juvenile for a sex offense, resulting in his placement in a level VI treatment program for juvenile sex offenders. The PSI concluded with the AP & P investigator's observation that Moreno had demonstrated no circumstances that would mitigate his actions, and thus, it was recommended that Moreno serve a minimum of ten years in prison—the median term set forth in section 76–5–403.1's mandatory minimum prison sentence structure. *See id.*

¶ 5 For the PSE, Moreno was interviewed again, and he was given a battery of tests. During the interview, Moreno admitted that he did not remember being sexually abused as a child, but he did remember being sexually active with other children, and he also remembered specific instances of physical abuse. He referred the investigator to the film *Radio Flyer* when asked to further describe how he had been abused. However,

his account was far from detailed, and beyond his movie reference, he made no effort to support his claims. Concerning the events that lead to his arrest, Moreno asserted that he sodomized the boy to determine whether a child's penis could become erect with sufficient stimulation.

¶ 6 The PSE also discussed the results of the battery of psychological tests given to Moreno. Apparently, Moreno functions at borderline intelligence level, with an estimated IQ of 78. However, the report concluded that he is fully capable of comprehending the inappropriate nature of his behavior. Moreno exhibited deviant tendencies when his sexual responsiveness was tested, with his highest level of sexual arousal occurring during his exposure to scenarios that depicted sexual activity with young boys, specifically with twelve-year-old prepubescent/pubescent boys and with three-year-old boys. Through the interpretation of this information, the interviewing psychologist concluded that Moreno "shows some significant difficulty obeying the standards and values of society" and that he is "prone toward following his own desires regardless of how they impact other people." The PSE also noted that Moreno had "significant problems in regards to his sexuality and the controlling of his impulses and attractions toward prepubescent males" and a tendency to blame others for his crimes. Finally, the PSE informed the trial court that Moreno was avoiding responsibility for his actions and that although he did express regret, he posed a "moderate risk to reoffend."

¶ 7 Both the PSI and the PSE were submitted to the trial court, and at the outset of the sentencing hearing, the judge stated that he had read, and was familiar with, both documents. The judge then permitted both Moreno and the State to offer evidence in mitigation or aggravation of Moreno's crime. After hearing from both parties, the court found that Moreno had shown only one circumstance in mitigation: the existence of certain disabilities that were apparent from the PSE. In contrast, the court found several factors in aggravation. The court found that although Moreno had previously completed a sexual offender treatment program, he had

done nothing to minimize his behavior and that he had, in fact, attempted to use elements of his previous treatment to his advantage in the sentencing hearing. The court also found that the techniques that Moreno used to lure the boys into a secluded and abandoned yard were tantamount to "grooming," and therefore, they were also an aggravating factor. Finally, the court found that the gravity of Moreno's crime was aggravated not only by the unusually vulnerable status of the victims—the youngest victim was merely five years old and small in stature, while Moreno is an adult male over six feet tall and nearing 200 pounds—but also because the incident involved a number of young children who were either directly affected by Moreno's actions or who witnessed the behavior. The court then concluded that the aggravating circumstances "far outweighed" the mitigating circumstances and sentenced Moreno to the maximum, mandatory minimum prison term—a minimum of fifteen years in prison, but possibly life. Moreno now appeals.

## ANALYSIS

¶ 8 Moreno argues that the trial court abused its discretion by ignoring "powerful relevant mitigating evidence that outweighed any aggravating factors." "This court 'traditionally afford[s] the trial court wide latitude and discretion in sentencing.'" *State v. Helms*, 2002 UT 12, ¶ 8, 40 P.3d 626 (alteration in original) (citation omitted). We will reverse only if we determine that a sentencing court has exceeded its permitted range of discretion, or, stated differently, if we determine that the trial court has "failed to consider all legally relevant factors, or imposed a sentence that exceeds legally prescribed limits." *State v. Nuttall*, 861 P.2d 454, 456 (Utah Ct.App.1993). Moreover, our decision is informed by the understanding that "the exercise of discretion in sentencing necessarily reflects the personal judgment of the [trial] court and [we] can properly find abuse only if it can be said that no reasonable [person] would take the view adopted by the trial court." *Id.* (first and third alterations in original) (quotations and citation omitted).

¶ 9 Moreno pleaded guilty to sodomy on a child, for which he faced a mandatory minimum prison sentence ranging from five years to fifteen years. *See* Utah Code Ann. § 76-5-403.1 (2003). By statute, however, the trial court was required to sentence Moreno to the term of middle severity—a minimum term of ten years in prison—unless the court found circumstances that warranted sentencing him to either the greater or the lesser term. *See id.* § 76-3-201(7) (2003); *see also State v. Simmons*, 2000 UT App 190, ¶ 19, 5 P.3d 1228. "To impose the greater or lesser mandatory minimum sentence, the trial court must ' "(1) identify the mitigating and aggravating circumstances and (2) state the reasons for whichever minimum mandatory sentence is imposed." ' " *Simmons*, 2000 UT App 190 at ¶ 19, 5 P.3d 1228 (citation omitted); *see also State v. Diaz*, 2002 UT App 288, ¶ 27, 55 P.3d 1131 (discussing Utah's mandatory minimum sentencing scheme). However, the trial court's decision is not controlled by an arbitrary mathematical formula. Rather, the trial court is allowed a great deal of discretion in determining the relative weight of competing aggravating and mitigating circumstances in these cases because the trial court is in the best position to ensure that justice is done and to determine whether any "[o]ne factor in mitigation or aggravation [should] weigh more than several factors on the opposite scale." *State v. Russell*, 791 P.2d 188, 192 (Utah 1990).

¶ 10 This should not be read to mean that the trial court's sentencing decision is beyond review. The trial court is charged with identifying, on the record, the aggravating and mitigating circumstances that affect its sentencing decision, because "[s]entencing should be conducted with full information and with careful deliberation of all relevant factors." *State v. Strunk*, 846 P.2d 1297, 1300 (Utah 1993). A trial court's failure to discharge this duty will result in the case being remanded for resentencing with instructions that the trial court consider all of the circumstances relevant to the sentencing decision. *See id.*

¶ 11 Here, there is no question that Moreno argued to the trial court that he had been

cooperative with the authorities and that he felt remorse for his actions. And both the PSI and the PSE contain references to Moreno's claim that he had been abused as a child. Moreover, each of these circumstances, if supported, should be considered as mitigating evidence in sentencing decisions. *See, e.g., Wiggins v. Smith,* 539 U.S. 510, 534–38, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (concluding that trial counsel was ineffective for failing to fully investigate circumstances of an abusive past when such evidence would likely have mitigated against the application of the death penalty); *United States v. Doe,* 398 F.3d 1254, 1257–61 (10th Cir.2005) (accepting cooperation as one of many possible circumstances in mitigation to consider for sentencing purposes); *United States v. Gaines,* 87 Fed.Appx. 145, 146 (10th Cir.2004) (discussing that remorse and acceptance of responsibility may be used as circumstances in mitigation for sentencing purposes), *cert. denied,* —— U.S. ——, 124 S.Ct. 2862, 159 L.Ed.2d 286 (2004).

¶ 12 However, Moreno's argument fails to recognize that a critical element in the process is the trial court's fact finding role in determining the existence of circumstances in aggravation and mitigation. *See, e.g., State v. Helms,* 2002 UT 12, ¶ 11, 40 P.3d 626 (discussing aggravating and mitigating circumstances in the context of findings); *Russell,* 791 P.2d at 192 (using the term "finding" when discussing whether the trial court had erred in not considering certain evidence); *State v. Yoder,* 935 P.2d 534, 549 (Utah Ct. App.1997) (discussing the existence of aggravating circumstances as findings). Although we have not previously described the court's duty as a duty to make findings, it is clear from our case law that such is the case.

■ ¶ 13 Concomitantly, any mitigating or aggravating circumstance found by the trial court must be supported by evidence, and the proponent of the circumstance bears the burden of proving its existence by a preponderance of the evidence. *Cf. United States v. Spedalieri,* 910 F.2d 707, 712 (10th Cir.1990) (noting that "[t]he burden of proof is on the defendant" to show that he accepted responsibility for a criminal act); *see also State v. Spain,* 263 Kan. 708, 953 P.2d 1004, 1010

(1998) (stating "the implicit standard of proof for aggravating circumstances ... is preponderance of the evidence"). "Combining this burden with the application of the clearly erroneous standard, the trial court's assessment is entitled to deference by the appellate court and will generally be sustained." *United States v. Ochoa–Fabian,* 935 F.2d 1139, 1142 (10th Cir.1991); *see also City of Orem v. Lee,* 846 P.2d 450, 452 (Utah Ct.App.1993) (applying the clearly erroneous standard to a trial court's factual findings in a bench trial setting).

¶ 14 Here, Moreno argues that the trial court erred in not considering—or more accurately, not finding—that he was cooperative, that he was remorseful, and that his conduct was influenced by his abusive childhood. The trial court found that only one mitigating circumstance existed in this case: Moreno's mental disability as highlighted in the PSE. Thus, inferentially, the trial court found that none of Moreno's other claimed mitigating circumstances were supported by the evidence. Moreover, unlike age, which is not generally subject to dispute, and which should be considered as mitigating when a defendant is very young and unsophisticated, each of the mitigating circumstances that Moreno claims the trial court ignored is subject to some dispute in most, if not all, cases. *Compare State v. Strunk,* 846 P.2d 1297 (Utah 1993) (remanding for a new sentencing hearing after the trial court failed to consider, or find, that the defendant was merely sixteen at the time of the crime), *with United States v. Gaines,* 87 Fed.Appx. 145, 146 (10th Cir.2004) ("The district court is in a better position than the appellate court to weigh the defendant's sincerity of remorse and contrition." (quotations and citation omitted)), *United States v. Whitehead,* 912 F.2d 448, 451 n. 1 (10th Cir.1990) (stating that "the reduction for acceptance of responsibility [which can be equated with a defendant's remorse for his actions] should not be granted automatically upon the defendant's mere mouthing of empty platitudes" (quotations, citation, and alteration omitted)), *and State v. Michael,* 311 N.C. 214, 316 S.E.2d 276, 279 (1984) (stating, in the context of a discussion concerning the mitigating effects of history of abuse that "when the evidence does not

compel a finding that the factor was proved beyond a preponderance of the evidence, it is insufficient" to show that the trial court erred).

■ ¶ 15 Moreover, and perhaps most importantly, the evidence Moreno relies on to support his claims is at best inconsistent. During the sentencing hearing, both Moreno and his trial counsel described Moreno as being remorseful. However, in the PSI, the AP & P investigator concluded that Moreno was not remorseful, but instead that he was attempting to blame others for his conduct. Thus, the trial court was presented with two competing views. Because there were two differing views presented, and because "the trial court was not obliged to believe the self-serving statements of the defendant," *State v. Larson*, 560 P.2d 335, 336 (Utah 1977), we cannot say that the trial court erred in not finding that Moreno was remorseful.

■ ¶ 16 Moreno's claim concerning his "exceptional cooperativeness" is equally unavailing. Nowhere in the sentencing hearing does Moreno expressly assert that he had been "exceptionally cooperative" with the investigation. Rather, he simply asserted that he accepted responsibility for his crime and that he had admitted to the AP & P investigator that his conduct was vile. While true, it is also true that Moreno fled the scene of the crime and that he made no effort to report his conduct to the police. Instead, any cooperation that he exhibited occurred after his arrest, and, of course, after he had been caught in the act by the victims' father. And perhaps most importantly, the trial court indirectly addressed Moreno's claim of cooperativeness, finding that Moreno had, through his previous exposure to sexual offender treatment, "learned all of the key words and phrases needed to recognize the nature of his offense, the consequences of his offense and what he has done." The trial court's finding implies that the court believed that the source of Moreno's behavior was not a desire to mitigate the damage caused by his conduct, but instead was an attempt to use what he had learned through therapy to his advantage in the sentencing process. Again, under these circumstances, we cannot conclude that the trial court erred when it did not find

Moreno's cooperation to be a mitigating circumstance.

■ ¶ 17 Finally, we find no error in the trial court's refusal to accept Moreno's alleged abusive past as a mitigating circumstance. In both the PSI and the PSE Moreno refers to an abusive childhood. However, the versions are inconsistent and not well developed. Moreover, they are also not supported by any independent evidence of abuse, regardless of the nature or source. Finally, Moreno made no attempt during the sentencing hearing to mention his alleged abusive history or its impact on his behavior. Consequently, the trial court acted well within its discretion in discounting or ignoring the abuse claims briefly detailed in the PSI and PSE, and in not accepting them as mitigating circumstances for its sentencing decision.

## CONCLUSION

¶ 18 Trial courts are required to make factual findings concerning the existence of circumstances in mitigation or aggravation when deviating from the term of middle severity in cases involving the application of a mandatory minimum sentencing scheme. In the absence of any express findings regarding proffered mitigating or aggravating circumstances, we will conclude that the trial court, by implication, found that the proffered circumstances did not amount to circumstances in aggravation or mitigation. The trial court here made express findings concerning several aggravating and mitigating circumstances. It did not, however, accept all of Moreno's proffered mitigating circumstances as mitigating, which by implication indicates that the court found them not to be mitigating. Having reviewed the record, we conclude that the trial court's decision concerning these circumstances was not clearly erroneous. Therefore, the court did not abuse its discretion in sentencing Moreno to the maximum term of fifteen years to life in prison.

¶ 19 Accordingly, we affirm Moreno's sentence.

¶ 20 WE CONCUR: JAMES Z. DAVIS and NORMAN H. JACKSON, Judges.