2006 UT App 103

**STATE of Utah, Plaintiff and Appellee,**

v.

**Darius Peni MALAGA, Defendant and Appellant.**

**No. 20030347–CA.**

Court of Appeals of Utah.

March 16, 2006.

---

Elizabeth Hunt, Elizabeth Hunt LLC, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Karen A. Klucznik, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

DAVIS, Judge:

¶ 1 Darius Malaga (Defendant) appeals his conviction for murder, aggravated kidnaping, aggravated robbery, and conspiracy to commit murder. We affirm.

## BACKGROUND

¶ 2 These appellate proceedings arise out of a trial held in January 2003, in which Defendant was convicted of the murder of Amy Tavey, as well as the conspiracy to murder and the aggravated kidnaping and aggravated robbery of Keith Williams. Co-defendant Silia Olive was convicted of aggravated kidnaping and felony murder.

¶ 3 On May 3, 2002, Olive and her minor friend, A.M., lured Williams and his girl-friend Tavey to Olive's home in order to assault, kidnap, and murder Williams in retribution for something Williams allegedly had done. Immediately upon entering Olive's home, Williams was ambushed—Defendant hit him over the head with a gun, others joined in beating him, and Williams's wallet, necklace, ring, cell phone, watch, and car keys were stolen. Williams's hands and mouth were then bound with duct tape and he was forced to get into the trunk of his own vehicle, Defendant all the while telling Williams that Defendant was going to kill him. Tavey, meanwhile, was forced into another vehicle with Olive, A.M., and two other people who had been in Olive's home during the assault.

¶ 4 The two vehicles then left Olive's home, with Defendant driving Williams's vehicle

and Olive driving the other vehicle. The cars drove in tandem towards a residence where A.M. was staying, which was near the Jordan River. Not long into the trip, Williams was able to free his hands from the duct tape, pop the trunk from the inside, and escape undetected from his own car. Meanwhile, in the other car, Tavey was being assured that nothing would happen to her if she "[kept her] mouth shut."

¶ 5 As the two cars approached the residence, Defendant pulled up next to Olive. Defendant briefly spoke to Olive and then drove away. Olive parked the car and let A.M. get out. A.M. entered the residence, while Tavey and the three others stayed in or near the car. Approximately thirty minutes later, Defendant returned. He appeared very angry and agitated, as he had apparently discovered Williams's escape. He demanded to know where Tavey was, then pulled Tavey from the car and led her away by her arm. A few minutes later, Olive and the others in the car heard multiple gunshots. Inside the residence, A.M. also heard gunshots.

¶ 6 Tavey's body was found the next morning floating near the north shore of the Jordan River. An autopsy revealed that she had been killed by gunshots fired into her back that penetrated her heart and lungs. On January 29, 2003, Defendant was convicted of the murder of Tavey, as well as the conspiracy to murder and the aggravated kidnaping and aggravated robbery of Williams. Defendant was sentenced to the maximum sentence possible on each count, the sentences to run consecutively. Defendant timely appealed.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 7 Defendant argues that many of the instructions given to the jury constituted either trial errors or structural errors. *See Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (defining trial error as "simply an error in the trial process itself" and structural error as a "structural defect affecting the framework within which the trial proceeds"). Generally, "whether a jury instruction correctly states the law presents a question of law which we

review for correctness." *State v. Weaver*, 2005 UT 49, ¶ 6, 122 P.3d 566 (quotations, citation, and alteration omitted). Here, however, Defendant concedes that he affirmatively approved the jury instructions at trial, and therefore argues that we should address purported errors made in the jury instructions under the doctrines of plain error/manifest injustice, exceptional circumstances, or ineffective assistance of counsel. For the reasons discussed below, we review the jury instructions only under the ineffective assistance of counsel doctrine.

■ ¶ 8 Defendant first requests that we review the jury instructions under the plain error/manifest injustice doctrine. *See* Utah R.Crim. P. 19(e) ("Unless a party objects to an instruction . . ., the instruction may not be assigned as error except to avoid a manifest injustice."); *State v. Casey*, 2003 UT 55, ¶ 40, 82 P.3d 1106 (equating manifest injustice to the plain error standard). We decline to do so because Defendant affirmatively approved of the jury instructions, and he conceded in his reply brief that the invited error doctrine precludes our examining the purported structural and trial errors under the plain error/manifest injustice doctrine. *See State v. Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111 (holding that jury instruction may not be assigned as error "if counsel, either by statement or act, affirmatively represented to the court that he or she had no objection to the jury instruction"); *see also State v. Geukgeuzian*, 2004 UT 16, ¶¶ 8–12, 86 P.3d 742 (holding that invited error doctrine precluded court from addressing purported structural error); *State v. Chaney*, 1999 UT App 309, ¶¶ 52–55, 989 P.2d 1091 (refusing to review elements instruction that omitted mens rea, despite the fact that such an instruction constituted reversible error, because defendant invited error); *State v. Perdue*, 813 P.2d 1201, 1205 (Utah Ct.App.1991) (refusing to review reasonable doubt instruction that purportedly constituted structural error because defendant invited the error).

■ ¶ 9 Similarly, Defendant cannot rely upon the exceptional circumstances doctrine. The concept of exceptional circumstances is "used sparingly, properly reserved

for truly exceptional situations ... involving rare procedural anomalies." *State v. Irwin,* 924 P.2d 5, 11 (Utah Ct.App.1996) (quotations and citation omitted). In order to find exceptional circumstances, Utah authority "requires something much more exceptional than mere oversight by trial counsel in failing to object" to jury instructions. *Id.* "To permit the use of the exceptional circumstances concept here, we would have to employ it in every case where there might have been ineffective assistance at trial...." *Id.*

¶ 10 We will, however, examine Defendant's claims of structural and trial errors in the jury instructions under the ineffective assistance of counsel doctrine. "Where, as here, a claim of ineffective assistance of counsel is raised for the first time on appeal without a prior evidentiary hearing, it presents a question of law." *State v. Bryant,* 965 P.2d 539, 542 (Utah Ct.App.1998). "To prevail on a claim of ineffective assistance of counsel, [Defendant] must show that (1) trial counsel's performance was objectively deficient and (2) there exists a reasonable probability that absent the deficient conduct, the outcome would likely have been more favorable to [Defendant]." *State v. Mecham,* 2000 UT App 247, ¶ 21, 9 P.3d 777 (citing *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "The failure of counsel to make ... objections which would be futile if raised does not constitute ineffective assistance." *State v. Whittle,* 1999 UT 96, ¶ 34, 989 P.2d 52 (quotations and citation omitted).

¶ 11 Although there are certain circumstances in which prejudice may be presumed under *Strickland, see Strickland,* 466 U.S. at 692, 104 S.Ct. 2052, here Defendant has the burden of demonstrating prejudice despite the fact that he has alleged structural error, *see State v. Cruz,* 2005 UT 45, ¶ 18, 122 P.3d 543 (stating in dicta that "a defendant claiming constitutional error who did not object at trial may only argue plain error or ineffective assistance of counsel on appeal and thus must prove prejudice, even if the constitutional error claimed on appeal is structural in nature"); *State v. Arguelles,* 921 P.2d 439, 441–42 (Utah 1996) (naming circumstances in which prejudice may be pre-

sumed, but refusing to presume prejudice despite the fact that defendant argued that structural error occurred); *see also Batiste v. State,* 888 S.W.2d 9, 14–16 (Tex.Crim.App. 1994) (en banc) (declining to hold that every structural defect is per se exempt from the prejudice prong of *Strickland* ); *State v. Flynn,* 190 Wis.2d 31, 527 N.W.2d 343, 353 (Ct.App.1994) ("[E]ven certain structural defects in the trial mechanism are subject to *Strickland's* prejudice prong...."). "Further, in cases in which it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we will do so without addressing whether counsel's performance was professionally unreasonable." *State v. Strain,* 885 P.2d 810, 814 (Utah Ct.App.1994) (quotations and citation omitted).

¶ 12 Defendant also alleges the trial court erred in imposing the maximum mandatory sentence for aggravated kidnaping without making findings regarding mitigating factors. *See* Utah Code Ann. § 76–3–201(6)(d) (Supp.2002). Generally, we review sentencing decisions "to determine whether the court exceeded its permitted range of discretion," *State v. Diaz,* 2002 UT App 288, ¶ 27, 55 P.3d 1131, and we will reverse only "if we determine that the trial court has failed to consider all legally relevant factors, or imposed a sentence that exceeds legally prescribed limits," *State v. Moreno,* 2005 UT App 200, ¶ 8, 113 P.3d 992 (quotations and citation omitted). However, Defendant concedes that this issue was not preserved by his trial counsel and therefore asks us to review this purported error under the plain error or ineffective assistance of counsel doctrines. Explaining the plain error standard, we have stated that

to obtain appellate relief from an alleged error that was not properly objected to, the appellant must show the following: (i)[a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined.

*Casey,* 2003 UT 55 at ¶ 41, 82 P.3d 1106 (quotations and citation omitted). As stated above, "[t]o prevail on a claim of ineffective assistance of counsel, [Defendant] must show that (1) trial counsel's performance was objectively deficient and (2) there exists a reasonable probability that absent the deficient conduct, the outcome would likely have been more favorable to [him]." *Mecham,* 2000 UT App 247 at ¶ 21, 9 P.3d 777 (citing *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052).

## ANALYSIS

### I. Jury Instructions

¶ 13 In his opening brief, Defendant argues that the trial court's reasonable doubt jury instruction was erroneous, and his trial counsel was ineffective for failing to object to it, because the instruction contravened *State v. Robertson,* 932 P.2d 1219 (Utah 1997), *overruled on other grounds by State v. Weeks,* 2002 UT 98, ¶ 25 n. 11, 61 P.3d 1000.[1] However, *Robertson* has since been overruled, *see State v. Reyes,* 2005 UT 33, ¶¶ 30, 34, 116 P.3d 305; *see also State v. Weaver,* 2005 UT 49, ¶ 7, 122 P.3d 566 (stating that *Reyes* overruled *Robertson* ); *State v. Cruz,* 2005 UT 45, ¶ 21, 122 P.3d 543 (same), and prejudice under *Strickland* cannot be demonstrated when an ineffectiveness claim relies on recently overturned law, *see Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Moreover, Defendant has expressly conceded this issue. Accordingly, we have no occasion to consider it further.

¶ 14 Defendant next complains that, "[w]hile all of the charges against [Defendant] were premised on accomplice liability, none of the elements instructions … required the government to prove the elements of accomplice liability." Defendant therefore contends that his trial counsel was ineffective for failing to object to this purported omission and for failing to challenge the "stock instructions" regarding accomplice liability.[2] However, a defendant cannot show prejudice where, as here, the allegedly erroneous instructions were "superfluous and not the basis of the jury's verdict." *State v. DeAlo,* 748 P.2d 194, 198 (Utah Ct.App.1987) (discussing accomplice liability instruction); *see also State v. Tinoco,* 860 P.2d 988, 991 (Utah Ct.App.1993) (affirming assault conviction, even though one subsection of assault instruction was purportedly erroneous, because there was no evidence that defendant's behavior fell under that subsection).

¶ 15 Although the information in this case charged Defendant both as a principal and as an accomplice in the crimes, the State never pursued Defendant on the theory of accomplice liability at trial. Rather, it identified Defendant as a principal in the crimes for which he was charged. Indeed, the jury instruction regarding accomplice liability was included only because Olive had been charged as "a party" to the aggravated robbery of Williams. In other words, the allegedly erroneous instruction here was "superfluous [respecting Defendant] and not the basis of the jury's verdict." *DeAlo,* 748 P.2d at 198. Defendant therefore cannot demonstrate prejudice arising from this alleged error.[3]

---

1. In particular, Defendant argues that the reasonable doubt jury instruction did not express that the State's proof must obviate all reasonable doubt and contained impermissible language indicating that reasonable doubt is not one that is merely possible.

2. The instruction given to the jury on accomplice liability stated that "[e]very person, acting with the mental state required for the commission of the offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct." Another instruction, requested by counsel for Olive, stated that "[m]ere presence at the scene of the crime and knowledge that a crime is being

committed are not sufficient to establish that the defendant aided and abetted the crime, unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator." Defendant contends that these two instructions, read together, misled the jury with regard to the elements (especially the mens rea) and burden of proof required for accomplice liability.

3. Defendant briefly argues that the jury instruction regarding flight is also erroneous. However, the flight instruction, which was requested by counsel for Olive, clearly does not implicate Defendant; in fact, it states that "[t]he flight of a person *immediately after the commission of a crime* is not sufficient in itself to establish her guilt." (Emphasis added.) Defendant himself

¶16 Defendant also complains that the jury instructions regarding the elements of murder were erroneous because they omitted the element of depraved indifference, which was charged in the information, but included an instruction defining "grave risk of death," which is an element of depraved indifference homicide.[4] However, a defendant cannot show prejudice where, as here, the trial court conforms the jury instructions to evidence presented at trial. *See, e.g., State v. Stevenson*, 884 P.2d 1287, 1292 (Utah Ct.App.1994) (affirming rape conviction even though rape instruction did not include the essential element of nonmarriage of accused and victim because the nonmarriage element "was never an issue at trial" and "its absence did not prejudice defendant"); *State v. Ellifritz*, 835 P.2d 170, 179 (Utah Ct.App.1992) (affirming conviction where jury instruction and information deviated, but instruction corresponded to evidence presented at trial, because "the alleged error in the jury instruction was not prejudicial").

¶17 Here, the trial court simply tailored the jury instructions to the evidence presented at trial. The information alleged that Defendant: (1) intentionally or knowingly caused the death of Tavey; (2) intending to cause serious bodily injury to Tavey, committed an act clearly dangerous to human life that caused the death of Tavey; or (3) acting under circumstances evidencing depraved indifference to human life, engaged in conduct that created a grave risk of death to Tavey and thereby caused the death of Tavey. However, at trial, the State's sole theory of liability was that Defendant intentionally shot Tavey. Therefore, the trial court instructed the jury that, to convict Defendant of murder, the jury had to find that Defendant "intentionally or knowingly" caused the death of Tavey or, intending to cause serious bodily injury to another, committed an act clearly dangerous to human life that caused the death of Tavey. Because the trial court simply conformed the instructions to the evidence, thereby rendering superfluous the omission of the depraved indifference element and the inclusion of the grave risk of death definition, *see DeAlo*, 748 P.2d at 198, Defendant cannot demonstrate prejudice arising out of this purported error.

¶18 Defendant next challenges the jury instructions regarding conspiracy. "[W]e review jury instructions in their entirety to determine whether the instructions, taken as a whole, fairly instruct the jury on the applicable law." *State v. Stringham*, 957 P.2d 602, 608 (Utah Ct.App.1998) (quotations and citation omitted). "So long as the jury is informed what each element is *and* that each must be proved beyond a reasonable doubt, the instructions taken as a whole may be adequate even though the essential elements are found in more than one instruction." *State v. Laine*, 618 P.2d 33, 35 (Utah 1980); *see also State v. Perdue*, 813 P.2d 1201, 1203 (Utah Ct.App.1991) ("[W]e affirm when the instructions, taken as a whole, 'fairly tender the case to the jury [even where] one or more of the instructions, standing alone, are not as full or accurate as they might have been.'" (second alteration in original) (citation omitted)).

¶19 Viewing the instructions as a whole, it is clear that Defendant's complaints regarding the jury instructions have no merit. Defendant contends that the jury instructions regarding conspiracy did not state elements such as specific intent and a meeting

---

concedes that he went to Las Vegas several days after the commission of the crimes. Because the allegedly erroneous instruction here was "superfluous and not the basis of the jury's verdict" against Defendant, *State v. DeAlo*, 748 P.2d 194, 198 (Utah Ct.App.1987), Defendant cannot demonstrate prejudice arising from this alleged error.

4. Defendant also argues that the jury instructions regarding the murder elements were erroneous because they included the element of unlawfulness, which is not an element of murder. However, a defendant is not prejudiced by incorrect jury instructions when the error increases the State's burden by adding another element to be proven. *See State v. Carruth*, 947 P.2d 690, 694 (Utah Ct.App.1997). "Such an error actually benefits the defendant." *Id.* (quotations and citation omitted). Because Defendant cannot demonstrate prejudice under *Strickland v. Washington*, 466 U.S. 668, 691–92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Defendant's ineffective assistance of counsel claim cannot be premised on this purported error. *See State v. Strain*, 885 P.2d 810, 814 (Utah Ct.App.1994).

of the minds, nor did they instruct that all elements had to be found beyond a reasonable doubt. Yet Instruction No. 50 stated that, to convict Defendant of conspiracy to commit murder, the jury had to find that Defendant "conspired to intentionally and knowingly cause the death of Keith Williams." Instruction No. 51 defined conspiracy, stating that a defendant is guilty of conspiracy only if he "intend[ed] that conduct constituting a crime be performed" and "agree[d] with one or more persons" to engage in that conduct. Under Instruction No. 50, "each and every" element of conspiracy had to be proven beyond a reasonable doubt. Quite simply, the instructions as a whole adequately informed the jury regarding the elements and burden of proof of conspiracy.

¶ 20 Defendant also challenges the jury instructions regarding the testimony of Olive, arguing that an instruction directing the jury "to treat [Olive's] testimony as they would that of any other witness[ ]" was erroneous because "Olive was not any other witness," but was instead an accomplice and an informer. Although it is true that the trial court instructed the jury that a defendant's testimony should be given "the same consideration" as that of other witnesses, the trial court also instructed the jury that an informer's testimony "must be examined and weighed ... with greater care than the testimony of an ordinary witness" and that an accomplice's testimony should be viewed "with distrust." Here, Olive was not only a defendant, but also an informer and accomplice. We cannot assume that, in weighing Olive's testimony, the jury simply ignored the trial court's instructions regarding informer and accomplice testimony and relied solely on the court's instruction regarding how to treat a defendant's testimony. *See State v. Harmon*, 956 P.2d 262, 272 (Utah 1998) ("[O]ur judicial system greatly relies on the jury's integrity to uphold the jury oath, including its promise to follow *all* of the judge's instructions."). Viewing the instructions in their entirety, we cannot say the trial court erred in instructing the jury regarding how to weigh Olive's testimony.

¶ 21 Defendant finally contends that his counsel was ineffective in failing to challenge the murder causation instruction, arguing that the instruction was erroneous "because it failed to define ... the concept of intervening cause." Defendant argues that, under *State v. Lawson*, 688 P.2d 479 (Utah 1984), "it is appropriate to instruct the jury that the defendant's act is not considered the proximate cause of the result, if the result is caused by the act of a third party, which third party action was reasonably unforeseeable by the defendant." However, although *Lawson* allows for jury instructions regarding intervening causes, it certainly does not mandate them. *See id.* at 481–82. And where "there is no reasonable basis in the evidence to support the defense or its essential components, it is not error for the trial judge to ... refuse to instruct the jury as to the defense." *State v. Harding*, 635 P.2d 33, 34 (Utah 1981); *see also State v. Brown*, 607 P.2d 261, 265–66 (Utah 1980) (affirming trial court's refusal to give self-defense instruction where there was "no credible evidence that defendant might have been justified in using deadly force to protect himself or that he reasonably believed himself to be in danger").

¶ 22 Here, the murder causation instruction actually did instruct the jury regarding intervening causes—it noted that the proximate cause of an injury must be "unbroken by an efficient intervening cause," that proximate cause exists only "through a chain of natural effects and causes unchanged by human action," and that a defendant can be relieved of liability if other causes are "the sole proximate cause of the death" of the victim. Furthermore, Defendant presented no evidence at trial that, although he removed Tavey from the car and took her down to the river on the night she died, another person unforeseeably came upon them and shot her. Instead, Defendant's defense at trial was that someone else took Tavey from the vehicle and killed her, a theory which does not implicate intervening causes at all. Because there was no evidence presented that a third party killed Tavey after Defendant had removed her from the car and taken her to the river, the trial court did not err by failing to separately instruct the jury on intervening causes.

¶ 23 In conclusion, the trial court's jury instructions regarding conspiracy and murder causation were not erroneous, nor did the trial court err in instructing the jury how to weigh Olive's testimony. Therefore, the failure of Defendant's counsel to object to these instructions does not constitute ineffective assistance of counsel. *See State v. Whittle,* 1999 UT 96, ¶ 34, 989 P.2d 52 ("The failure of counsel to make ... objections which would be futile if raised does not constitute ineffective assistance." (quotations and citation omitted)). Furthermore, Defendant can demonstrate no prejudice arising from the jury instructions regarding flight, reasonable doubt, accomplice liability, or the elements of murder. Defendant's ineffective assistance of counsel claim therefore cannot be premised on these purported errors. *See State v. Strain,* 885 P.2d 810, 814 (Utah Ct.App.1994) ("[I]n cases in which it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we will do so without addressing whether counsel's performance was professionally unreasonable." (quotations and citation omitted)).

## II. Sentencing

¶ 24 Defendant additionally argues the trial court committed plain error by imposing the maximum mandatory sentence for aggravated kidnaping without making findings regarding mitigating factors, and that his counsel was deficient for failing to object to such error. Under Utah Code section 76–3–201, "[i]f a statute under which the defendant was convicted mandates that one of three stated minimum terms shall be imposed, the court shall order the imposition of the term of middle severity unless there are circumstances in aggravation or mitigation of the crime." Utah Code Ann. § 76–3–201(6)(a) (Supp.2002). The statute further requires the trial court to "set forth on the record the facts supporting and reasons for imposing the upper or lower term." *Id.* § 76–3–201(6)(d).

¶ 25 Here, Defendant was convicted of aggravated kidnaping in violation of Utah Code section 76–5–302, which is punishable by imprisonment for an indeterminate term of not less than six, ten, or fifteen years. *See id.*

§ 76–5–302 (Supp.2002). In sentencing Defendant on this count, the trial court acknowledged that it needed to consider the aggravating and mitigating circumstances, but sentenced Defendant to a minimum term of fifteen years on this count without making any findings regarding mitigating factors. Instead, it merely determined that "the aggravating circumstances outweigh the mitigating circumstances because the whole intent was to kill Keith Williams. And I can't imagine a more aggravating circumstance than that."

¶ 26 Defendant contends the trial court erred by failing to make findings regarding mitigating factors—specifically findings about Defendant's youth and his "strong family support"—and that his counsel was deficient for failing to object to such error. To obtain appellate relief under the plain error doctrine, Defendant must show that an error occurred and the error should have been obvious to the trial court. *See State v. Casey,* 2003 UT 55, ¶ 41, 82 P.3d 1106. An ineffective assistance of counsel claim requires Defendant to show that his trial counsel's performance was objectively deficient. *See State v. Mecham,* 2000 UT App 247, ¶ 21, 9 P.3d 777 (citing *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "The failure of counsel to make ... objections which would be futile if raised does not constitute ineffective assistance." *Whittle,* 1999 UT 96 at ¶ 34, 989 P.2d 52 (quotations and citation omitted).

¶ 27 Defendant can show neither plain error nor ineffective assistance of counsel. "[A] critical element in the [sentencing] process is the trial court's fact finding role in determining the existence of circumstances in aggravation and mitigation." *State v. Moreno,* 2005 UT App 200, ¶ 12, 113 P.3d 992. Therefore, "any mitigating or aggravating circumstances found by the trial court must be supported by evidence," *id.* at ¶ 13, and "[i]n the absence of any express findings regarding proffered mitigating or aggravating circumstances, we will conclude that the trial court, by implication, found that the proffered circumstances did not amount to circumstances in aggravation or mitigation," *id.* at ¶ 18. Here, Defendant complains that

the trial court did not make any findings regarding his youth and his "strong family support." However, age should be considered as mitigating only "when a defendant is very young and unsophisticated," *id.* at ¶ 14, and the trial court was not obliged to believe inconsistent evidence and the self-serving statements of Defendant, *see id.* at ¶¶ 15–17. Defendant was twenty years old when he committed the crimes at issue here, and he had an extensive juvenile record as well as a conviction as an adult. Furthermore, although Defendant stated that his family remained "loving and supportive of him," the court received no letters in his support and attempts to contact his family members were unsuccessful. Because the purported mitigating factors were not supported by evidence, we conclude that the trial court simply found that Defendant's age and family support "did not amount to circumstances in . . . mitigation." *Id.* at ¶ 18. Therefore, the trial court did not commit error by failing to make findings regarding these factors, nor did Defendant's counsel provide ineffective assistance.

¶ 28 Affirmed.

¶ 29 WE CONCUR: JUDITH M. BILLINGS and GREGORY K. ORME, Judges.