2006 UT App 511

STATE of Utah, Plaintiff and Appellee,

v.

Azharn ALFATLAWI, Defendant and Appellant.

No. 20050678–CA.

Court of Appeals of Utah.

Dec. 21, 2006.

John Pace, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Laura B. Dupaix, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before GREENWOOD, Associate P.J., DAVIS and THORNE, JJ.

## OPINION

DAVIS, Judge:

¶1 Defendant Azharn Alfatlawi appeals from his first degree felony convictions and sentences for six counts of aggravated robbery; see Utah Code Ann. § 76–6–302 (2003), and one count of aggravated burglary, see id. § 76–6–203 (2003).

## BACKGROUND

¶2 "We relate the facts and 'all reasonable inferences that may be drawn [therefrom] in a light most favorable to the [jury] verdict.'" State v. Hamilton, 2003 UT 22, ¶2, 70 P.3d 111 (first alteration in original) (quoting State v. Dunn, 850 P.2d 1201, 1212 (Utah 1993)).

¶3 Seven days after being paroled, Defendant and two accomplices committed three robberies by driving up to their victims, pointing a gun at them, and demanding money. Two days later, Defendant and his accomplices committed additional robberies using the same technique. One of the later robberies also resulted in a burglary because Defendant and his accomplices forced their way into their victim's home and stole her money and property. Police arrested Defendant and his two accomplices and charged them with eight counts of aggravated robbery and one count of aggravated burglary. Both accomplices negotiated plea bargains and only Defendant proceeded to trial.

¶4 At the preliminary hearing, the court dismissed one count of aggravated robbery against Defendant. The seven remaining counts of aggravated robbery and the aggravated burglary charge were tried to a jury. For each charge, the State sought a dangerous weapon enhancement, see Utah Code Ann. § 76–3–203.8 (Supp.2006), and an "in concert," or group criminal activity enhancement, id. § 76–3–203.1 (Supp.2006).

¶5 During jury selection, the trial court asked the prospective jurors to state where they and their family members worked. Prospective juror number ten (Juror Ten) stated that his or her child worked for "Utah Patrols." At the request of Defendant's trial counsel, the trial court asked the jurors if any of their family members worked in law enforcement, and Juror Ten did not reply. The trial court also asked if any of the prospective jurors or their family members had been the victims of a crime. Juror Ten stated that his or her spouse had been robbed at random and hit in the head with a tire iron. For that reason, trial counsel equivocally challenged Juror Ten for cause while discussing the juror in the trial judge's chambers. Trial counsel asked the trial judge and prosecutor if Juror Ten should be specifically questioned about whether the mugging would affect his or her impartiality.

In response, the trial judge stated that Juror Ten did not need to be rehabilitated, and that he would deny a challenge for cause. The trial court rejected the challenge because Juror Ten stated that the mugging of his or her spouse would not affect his or her ability to be impartial and to follow the directions of the court. Juror Ten was empaneled.

¶ 6 The trial court also asked the potential jurors if Defendant's tattoo, which prominently stated "Iraqi Pride" across his forehead, would affect their impartiality. Prospective juror thirty-one (Juror Thirty–One) stated in open court that he or she would not be affected by the "Iraqi Pride" tattoo, but that Defendant's teardrop tattoo below his eye would affect his or her impartiality. The trial court questioned Juror Thirty–One in chambers, where he or she stated that teardrop tattoos signify the tattoo wearer's gang involvement, prior imprisonment, or commission of murder. The trial court struck Juror Thirty–One for cause, but did not ask the remaining potential jurors if anyone else had concerns about Defendant's teardrop tattoo. During the remainder of jury selection trial counsel used peremptory challenges on a former police officer, an individual whose sibling worked as a parole officer, and two burglary victims.

¶ 7 Once the jury was empaneled, a two-day trial occurred. Defendant alleged that he did not commit the crimes at issue. The State called one of Defendant's accomplices, James Butcher, to testify that Defendant committed the crimes, along with a third accomplice, James Arthur. Defendant's trial counsel attacked Butcher's credibility during cross-examination. In response, the State corroborated Butcher's testimony with physical evidence tying Defendant to three of the crimes—the burglary and two robberies—and with testimony from four of the robbery victims identifying Defendant as the gunman. When the parties and the court discussed jury instructions, trial counsel did not request, and the court did not offer, an instruction on the unreliability of accomplice testimony. *See id.* § 77–17–7(2) (2003). However, the jury did receive general instructions on the credibility of witnesses. Trial counsel also did not request, and the

court did not offer, a jury instruction containing a detailed definition of the "in concert" element of the group criminal activity enhancement to Defendant's crimes. *Id.* § 76–3–203.1(1)(b).

¶ 8 When the jury finished deliberating, the trial court ordered Defendant to be shackled prior to the return of the jury. The trial court stated that the shackling was in response to allegations that witnesses testifying against Defendant had been threatened. Trial counsel did not object to this shackling and the jury returned and rendered its verdict. Defendant remained shackled while the jury was polled, and nothing in the record suggests the jurors were aware that Defendant was shackled. The jury acquitted Defendant of one count of aggravated robbery, and convicted him of the six remaining counts of aggravated robbery and the aggravated burglary charge.

¶ 9 At the sentencing hearing, Defendant asked the trial court to order the sentences to run concurrently. The trial judge began discussing Defendant's sentence and noted that Defendant had "been involved in the criminal justice system since [he] was very young." The judge also stated that during trial he learned of "the trauma that the victims went through." Later in the hearing, Defendant interrupted the trial judge and, consistent with his defense at trial, stated that he did not commit the crimes at issue. After the trial judge told him to be quiet, Defendant responded by swearing at the judge and making abusive threats to the judge and his family. As a result of this outburst, the trial judge ordered Defendant removed from the courtroom. The judge then proceeded with sentencing, stating:

> If that's the kind of people we got over in Iraq, maybe we ought to get out. I suspect that's not the case. I suspect there are good people, just like everywhere else in the world. Mr. Alfatlawi is not one of them. He is a criminal of the worst kind. He preys on people that are minding their own business. He robbed a store where a lady was trying to make a new store work, in the middle of the night. They took advantage of a widow in the Cove area, who went out ... to try and

give assistance, and they terrorized her. A man coming home, unloading his baggage in his home, they robbed. A young woman walking down the street, who was out of gas, in the night, coming home from work, they attempted to rob her. She didn't have anything, so they couldn't take it. Random acts of violence, for example, on [one of the victims]. This is just outside the pizza store on 13th there. They pull up and point a gun at him and demand money. He only has five dollars, but he gives it to them. And on and on and on.

This is the kind of guy that ought to be off the street for a long period of time, as long as I can make it. Considering his attitude, if the Board of Pardons let's [sic] him out in other than a box, they are nuts, because he will do this again. It is too bad we can't deport him back to Iraq. If I had any say-so about it, that's exactly where he would go, and he can deal with the situation over there. He would last about 20 minutes, with his attitude.

But, in any event, Mr. Alfatlawi has earned and he gets from me a consecutive sentence on each one of these. They all run consecutively. By my count it is 70 years to life.... This guy deserves to be in prison for a long, long time. Commitment forthwith. You can give him the good news, Mr. Simms.

 . . . .

 .... Tell Mr. Alfatlawi to have a nice life.

Thus, the trial court ordered Defendant to serve his seven sentences consecutively. *See id.* § 76–3–401 (2003).

¶ 10 Appellate counsel moved for a remand to determine whether trial counsel performed ineffectively, *see* Utah R.App. P. 23B, which motion was denied. Defendant now appeals his convictions and sentences.

## ISSUES AND STANDARDS OF REVIEW

¶ 11 Defendant raises eight issues on appeal. Six of Defendant's claims involve allegations of ineffective assistance of counsel in violation of his rights under both the United States and Utah Constitutions. *See* U.S. Const. amend. VI; Utah Const. art. I, § 12.

"When an ineffective assistance of counsel claim 'is raised for the first time on appeal without a prior evidentiary hearing, it presents a question of law.'" *State v. Holbert,* 2002 UT App 426, ¶ 26, 61 P.3d 291 (quoting *State v. Bryant,* 965 P.2d 539, 542 (Utah Ct.App.1998)).

¶ 12 Five of Defendant's arguments include allegations of plain error. To establish plain error and to obtain appellate relief from an alleged error that was not properly objected to, Defendant must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for [Defendant]." *State v. Cruz,* 2005 UT 45, ¶ 16, 122 P.3d 543 (quotations and citation omitted); *see also State v. Powell,* 872 P.2d 1027, 1031 (Utah 1994).

¶ 13 Next, Defendant challenges the constitutionality of the dangerous weapon enhancement statute, *see* Utah Code Ann. § 76–3–203.8, arguing that it violates his right against double jeopardy. Defendant claims that we may review this issue under the exceptional circumstances doctrine. We apply exceptional circumstances when "our failure to consider an issue that was not properly preserved for appeal would ... result[] in manifest injustice." *State v. Nelson–Waggoner,* 2004 UT 29, ¶ 23, 94 P.3d 186.

¶ 14 Defendant also challenges the trial court's determination that his sentences should run consecutively, arguing that the sentencing decision was based on bias, anger, and facts not in the record. Defendant again relies on plain error.

We afford the trial court wide latitude in sentencing and, generally, will reverse a trial court's sentencing decision only if it is an abuse of the judge's discretion. The trial court abuses its discretion when it fails to consider all legally relevant factors, or if the sentence imposed exceeds the limits prescribed by law.

*State v. Bluff,* 2002 UT 66, ¶ 66, 52 P.3d 1210 (quotations and citations omitted).

¶ 15 Finally, Defendant urges us to reverse based on cumulative error. "Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence ... that a fair trial was had." *State v. Kohl*, 2000 UT 35, ¶ 25, 999 P.2d 7 (omission in original) (quotations and citation omitted).

## ANALYSIS

¶ 16 Defendant appeals his convictions and sentences for six counts of aggravated robbery, *see* Utah Code Ann. § 76–6–302, and one count of aggravated burglary, *see id.* § 76–6–203. We discuss each of the alleged errors in turn.

### I. Potential Bias of Juror Ten

¶ 17 Defendant claims that his trial counsel was ineffective for failing to renew the challenge of Juror Ten for cause, and for failing to further investigate Juror Ten's potential bias during voir dire. "In order to succeed on an ineffective assistance of counsel claim, Defendant must show (1) trial counsel's performance was deficient by falling below an objective standard of reasonableness, and (2) trial counsel's deficient performance prejudiced Defendant by depriving him of a fair trial." *State v. Holbert*, 2002 UT App 426, ¶ 53, 61 P.3d 291 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). If Defendant "fails to establish either of the two parts of the *Strickland* test, counsel's assistance was constitutionally sufficient, and we need not address the other part of the test." *Id.*

(quotations and citation omitted). Respecting the first prong of the *Strickland* test, "we must indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy." *State v. Bryant*, 965 P.2d 539, 542 (Utah Ct.App.1998) (quotations and citations omitted). Respecting the second prong of *Strickland*, "[t]o demonstrate prejudice, '[D]efendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Holbert*, 2002 UT App 426 at ¶ 55, 61 P.3d 291 (second alteration in original) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).[1]

¶ 18 When applying the above principles to Defendant's argument that trial counsel was deficient for failing to remove Juror Ten, we make the following presumptions. First, trial counsel's "failure to remove[ ] a particular juror is presumed to be the product of a conscious choice or preference." *State v. Litherland*, 2000 UT 76, ¶ 20, 12 P.3d 92. Second, because jury selection is "a highly subjective, judgmental, and intuitive process, trial counsel's presumably conscious and strategic choice to refrain from removing a particular juror is further presumed to constitute effective representation." *Id.* Therefore, "it follows that the decision not to remove a particular juror need only be plausibly justifiable, and such plausible justifiability is ordinarily presumed." *Id.* at ¶ 25. Defendant asserts that he has rebutted these

---

1. In his reply brief, Defendant asserts that in reviewing an error of "constitutional dimension" we must reverse unless the State proves that the alleged error is harmless beyond a reasonable doubt. Thus, according to Defendant, the prejudice prong of ineffective assistance, *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984), and the prejudice prong of plain error, *see State v. Verde*, 770 P.2d 116, 121 & n. 8 (Utah 1989), will be satisfied unless the State proves that the error was harmless beyond a reasonable doubt. The State responded to Defendant's reply brief with a supplemental authority letter, *see* Utah R.App. P. 24(j), claiming that Defendant improperly stated the burden of proof. We agree. The harmless beyond a reasonable doubt standard is reserved for "the few contexts where ineffective assistance is 'presumed,' such

as where counsel is either totally absent or prevented from assisting the accused during a critical stage of the proceeding, ... and where counsel is burdened by an actual conflict of interest." *Kimmelman v. Morrison*, 477 U.S. 365, 381 n. 6, 106 S.Ct. 2574 (1986) (citations omitted); *see also Parsons v. Barnes*, 871 P.2d 516, 523 (Utah 1994); *State v. Genovesi*, 909 P.2d 916, 922 (Utah Ct.App.1995). Because the present case does not fall within the few situations where prejudice is presumed, Defendant has the burden of showing actual prejudice. Moreover, *Kimmelman* suggests that unpreserved constitutional claims brought collaterally under an ineffective assistance of counsel argument must satisfy the *Strickland* actual prejudice standard and not the presumed prejudice standard. *See Kimmelman*, 477 U.S. at 382 n. 7, 106 S.Ct. 2574.

presumptions by showing that trial counsel was so inattentive during jury selection that the failure to remove Juror Ten could not have resulted from a plausibly justifiable decision. We disagree.

¶ 19 To establish that trial counsel was inattentive, Defendant must show either "a specific and clear example of inattentiveness that directly caused the failure to object to a particular juror, or else show that counsel generally failed to participate in a meaningful way in the process as a whole." *Id.* at ¶ 25 n. 10. The record indicates that trial counsel was not inattentive to Juror Ten. Respecting the mugging of Juror Ten's spouse, trial counsel asked the trial judge and prosecutor if Juror Ten should be specifically questioned about whether the mugging would affect his or her impartiality. In response, the trial judge stated that Juror Ten did not need to be rehabilitated, and that he would deny a challenge for cause. Respecting the comment that Juror Ten's child worked for "Utah Patrols," trial counsel specifically requested the court to ask the jury panel if anyone had close friends or immediate family employed in law enforcement. Juror Ten did not respond. Because trial counsel made specific efforts to address any potential bias Juror Ten may have had, trial counsel was not inattentive during jury selection. Moreover, the record reveals that trial counsel performed diligently throughout jury selection by taking notes during voir dire and creating a seating chart. Trial counsel used peremptory challenges on a former police officer, an individual whose sibling worked as a parole officer, and two burglary victims. As such, Defendant has not overcome the presumption that trial counsel's decision not to remove Juror Ten was "plausibly justifiable," and we hold that trial counsel's performance was not deficient under *Strickland*. *Id.* at ¶ 25. Because we determine trial counsel acted objectively reasonably, we need not reach *Strickland's* requirement of prejudice. *See State v. Medina–Juarez*, 2001 UT 79, ¶ 14, 34 P.3d 187.[2]

¶ 20 Next, Defendant alleges that the trial court committed plain error by denying Defendant's equivocal challenge of Juror Ten for cause, and by failing to sua sponte remove Juror Ten for cause. To prevail, Defendant must show that the trial court committed an obvious error, and that such error was prejudicial. *See State v. Larsen*, 2005 UT App 201, ¶ 5, 113 P.3d 998 (stating plain error must be both "obvious and harmful"). The trial court commits error if it abuses its discretion by acting beyond the limits of reasonability. *See State v. Hamilton*, 827 P.2d 232, 239–40 (Utah 1992). An error is harmful if absent the error "there is a reasonable likelihood of a more favorable outcome for the defendant." *Larsen*, 2005 UT App 201 at ¶ 6, 113 P.3d 998 (quotations and citation omitted).

¶ 21 Applying plain error analysis to the present case, we note that

[i]t is generally inappropriate for a trial court to interfere with counsel's conscious choices in the jury selection process.... Only where a juror expresses a bias or conflict of interest that is so strong or unequivocal as to inevitably taint the trial process should a trial court overrule trial counsel's conscious decision to retain a questionable juror.

*Litherland*, 2000 UT 76 at ¶ 32, 12 P.3d 92. Although Juror Ten's initial comments may have raised some questions about his or her impartiality, the record does not show a bias "so strong or unequivocal as to inevitably taint the trial process." *Id.* Indeed, Juror Ten stated that the mugging incident would not affect his or her ability to be fair and impartial, and Juror Ten never unequivocally affirmed that his or her family member worked in law enforcement. Therefore, the trial court did not err by denying Defen-

---

**2.** We note that in *State v. King*, 2006 UT 3, 131 P.3d 202, the Utah Supreme Court remanded the defendant's claim that counsel rendered ineffective assistance by failing to question or challenge jurors that indicated a potential for bias. *See id.* at ¶ 26. *King* is factually distinguishable. In *King*, there was a clear showing of potential bias

because the potential jurors had family or friends that were the victims of abuse. *See id.* at ¶ 3. Here, however, the potential bias created by Juror Ten's child working for "Utah Patrols" was uncertain at best, so we will presume counsel acted effectively. *See State v. Litherland*, 2000 UT 76, ¶¶ 20, 25–28, 12 P.3d 92.

dant's equivocal challenge of Juror Ten for cause.[3]

¶ 22 Defendant also cannot demonstrate that the trial court's alleged error caused prejudice. The simple fact that a potential juror may have ties to law enforcement does not establish bias. *See State v. Ramos*, 882 P.2d 149, 152 (Utah Ct.App.1994) ("[B]oth this court and the Utah Supreme Court have upheld denials of motions to strike law enforcement personnel for cause when questioning on voir dire dispels any suggestion of bias raised by the prospective juror's law enforcement background."). The same is true of a potential juror whose family member has been the victim of a similar crime. *See State v. King*, 2006 UT 3, ¶¶ 22–24, 131 P.3d 202 (ruling no abuse of discretion when jurors whose family members or friends were victims of abuse sat on attempted forcible sexual abuse trial). Because Defendant cannot demonstrate that Juror Ten was actually biased against him, he cannot show prejudicial error. The trial court did not commit plain error by failing to remove Juror Ten.

## II. Cautionary Jury Instruction on the Unreliability of Accomplice Testimony

¶ 23 Defendant alleges that trial counsel was ineffective for failing to request a jury instruction cautioning the jury about the unreliability of the uncorroborated testimony of his accomplice, James Butcher. Utah Code section 77–17–7(2) states:

> In the discretion of the court, an instruction to the jury may be given to the effect that such uncorroborated testimony [of an accomplice] should be viewed with caution, and such an instruction shall be given if the trial judge finds the testimony of the accomplice to be self contradictory, uncertain or improbable.

Utah Code Ann. § 77–17–7(2). Defendant claims that trial counsel was deficient for not requesting the jury instruction because "[n]o

plausible, strategic reason conceivably exists for not requesting the accomplice cautionary instruction." When we review an " 'alleged deficiency in counsel's trial performance, we must indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Holbert*, 2002 UT App 426, ¶ 54, 61 P.3d 291 (quoting *State v. Bryant*, 965 P.2d 539, 542 (Utah Ct.App.1998)).

¶ 24 We note at the outset that the giving of the cautionary instruction was within the trial court's discretion. Section 77–17–7(2) states that the cautionary instruction is mandatory only "if the accomplice testimony is 'uncorroborated' and the 'trial judge finds the testimony of the accomplice to be self contradictory, uncertain or improbable.' " *State v. Dunn*, 850 P.2d 1201, 1226 (Utah 1993) (quoting Utah Code Ann. § 77–17–7(2) (1990)). Although the credibility of Butcher's testimony against Defendant was challenged, the testimony was not "self contradictory, uncertain or improbable," *see* Utah Code Ann. § 77–17–7(2), because other evidence corroborated Butcher's testimony. Four of the robbery victims positively identified Defendant as the gunman. The two remaining robbery victims and the burglary victim were tied to Defendant through physical evidence. As a result, the decision of whether to give a cautionary instruction rested with the trial court. Even if trial counsel requested the cautionary instruction, there is no assurance the court would have given the instruction. Therefore, Defendant has not overcome the presumption that trial counsel rendered "reasonable professional assistance." *Holbert*, 2002 UT App 426 at ¶ 54, 61 P.3d 291.

¶ 25 Nonetheless, even if counsel did perform deficiently, Defendant has not met *Strickland's* requirement of prejudice. *See Strickland v. Washington*, 466 U.S. 668, 690–91, 694, 104 S.Ct. 2052 (1984). The evidence supporting Defendant's convictions and corroborating Butcher's testimony is substantial. Moreover, the record shows that Defen-

---

3. Our holding comports with *King*, 2006 UT 3 at ¶ 24, 131 P.3d 202, as it pertains to the *King* defendant's plain error claim. In *King*, the trial court did not abuse its discretion by failing to sua sponte remove the potentially biased jurors be-

cause their potential bias was not " 'so strong or unequivocal as to inevitably taint the trial process.' " *Id.* (quoting *Litherland*, 2000 UT 76 at ¶ 32, 12 P.3d 92). The same is true with respect to Juror Ten in the present case.

dant readily attacked the credibility of Butcher's testimony and demonstrated Butcher's potential bias. Further, the jury instructions clearly informed the jury of its duty to weigh the credibility of witnesses, including any bias or motive for testifying. The effectiveness of this defense strategy and the jury instructions is evidenced by the jury's acquittal of the only robbery charge where Butcher's testimony remained uncorroborated. Taken together, these facts demonstrate that Defendant suffered no prejudice despite trial counsel's failure to request a cautionary instruction. *See Dunn,* 850 P.2d at 1226–28 (determining that evidence of guilt, attacks on credibility of accomplice witness, and general jury instructions on witness credibility rendered trial counsel's failure to request cautionary instruction nonprejudicial); *State v. Neeley,* 748 P.2d 1091, 1096 (Utah 1988) (same).

¶ 26 Defendant also asserts that the trial court committed plain error by failing to give a cautionary instruction. However, in addition to Defendant's failure to demonstrate prejudice, "[u]nless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice." Utah R.Crim. P. 19(e). Moreover, under the invited error doctrine a party on appeal "cannot take advantage of an error committed at trial when that party led the trial court into committing the error." *State v. Geukgeuzian,* 2004 UT 16, ¶ 9, 86 P.3d 742 (quotations and citation omitted). A defendant invites error where he "affirmatively approve[s] of the jury instructions" at trial. *State v. Malaga,* 2006 UT App 103, ¶ 8, 132 P.3d 703; *see also State v. Hamilton,* 2003 UT 22, ¶ 54, 70 P.3d 111. Because trial counsel confirmed the jury instructions without objection, invited error prevents our review of this issue under plain error. *See State v. Lee,* 2006 UT 5, ¶ 16, 128 P.3d 1179.

### III. Group Criminal Activity Instruction

¶ 27 Defendant claims trial counsel rendered ineffective assistance for failing to request a jury instruction defining the "in concert with two or more persons" element of the group criminal activity enhancement attached to Defendant's aggravated robbery and burglary charges. Utah Code Ann. § 76–3–203.1(1). Utah Code section 76–3–203.1 enhances the prison terms for first degree felonies, including aggravated robbery and burglary, "if the trier of fact finds beyond a reasonable doubt that the person acted in concert with two or more persons." *Id.* § –203.1(1), -(3). In order for the group criminal activity enhancement to apply, the State must prove that "all three actors are guilty of 'aiding and abetting.'" *State v. Lopes,* 1999 UT 24, ¶ 8, 980 P.2d 191 (interpreting older version of Utah Code section 76–3–203.1 (*see* Utah Code Ann. § 76–3–203.1 (1995) (amended 2000))), *aff'd on other grounds,* 2001 UT 85, 34 P.3d 762. This is because "due process requires that the prosecution prove every element of the charged crimes beyond a reasonable doubt." *Id.* at ¶ 13. Therefore, the State must prove, beyond a reasonable doubt, the additional element that Defendant acted "in concert" with his two accomplices. Utah Code Ann. § 76–3–203.1(1).

¶ 28 According to Defendant, the jury instruction pertaining to group criminal activity did not adequately define the in concert requirement, so trial counsel should have sought an instruction clarifying the State's burden. To prevail on his ineffective assistance claim, Defendant must prove that trial counsel's performance was objectively deficient, and that the deficiency caused prejudice. *See State v. Holbert,* 2002 UT App 426, ¶ 53, 61 P.3d 291. The State argues that trial counsel did not perform ineffectively because Defendant never disputed that the robberies were committed by at least three people acting in concert. Rather, Defendant's only defense was that he did not commit the robberies, which made the role of the two accomplices immaterial to that defense. Thus, Defendant's trial strategy focused on the identity of the perpetrator, not whether Defendant would be subject to an increased prison term if convicted. We will not second guess trial counsel's reasonable strategy. Defendant has therefore not overcome the presumption that trial counsel's actions resulted from "sound trial strategy," *id.* at ¶ 54 (quotations and citations omitted), and we

conclude that counsel's performance was not objectively deficient.

¶ 29 We likewise see no prejudice caused by trial counsel's failure to request a jury instruction defining the in concert requirement. The special verdict form required the jury to "find from all the evidence and beyond a reasonable doubt that in committing the offense of Aggravated Robbery the defendant, Azharn Al Fatlawi [sic] acted in concert with two or more persons." Thus, in the context of this case, the special verdict form adequately covered the in concert element. In order for the jury to convict Defendant with the group criminal activity enhancement, the jury had to find, beyond a reasonable doubt, that Defendant acted with two or more persons.

¶ 30 Defendant also fails to show prejudice because of the overwhelming evidence that he did commit the robberies and burglary with the aid and encouragement of two accomplices who were physically present or who participated as a party to the crime. *See* Utah Code Ann. § 76–3–203.1(1)(b) (defining "in concert" element of group criminal activity enhancement statute). All but one of the victims testified during trial that two or more people were in the car with Defendant. Defendant's accomplice, Butcher, also testified that he accompanied Defendant on each robbery, along with a third accomplice, James Arthur. This evidence demonstrates that even if the jury had received additional instruction, it still would have applied the group criminal activity enhancement. Thus, Defendant has not shown by a reasonable probability that without counsel's alleged errors the result would have been more favorable to him. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052 (1984). Trial counsel did not render ineffective assistance by failing to request a jury instruction defining the in concert element of the group criminal activity enhancement.

¶ 31 Defendant also attacks this issue under plain error. Defendant must show that the trial court erred by failing to sua sponte instruct the jury on the in concert element, and that such error was both "obvious and harmful." *State v. Larsen*, 2005 UT App 201, ¶¶ 5–6, 113 P.3d 998. Our analysis re-garding the lack of prejudice is equally applicable to Defendant's plain error claim. *See State v. Litherland*, 2000 UT 76, ¶ 31 n. 14, 12 P.3d 92; *State v. Verde*, 770 P.2d 116, 124 n. 15 (Utah 1989). Moreover, if any element of plain error is not met, "plain error is not established." *State v. Dunn*, 850 P.2d 1201, 1209 (Utah 1993). Because any alleged error did not result in prejudice, Defendant's plain error claim has no merit.

¶ 32 In addition, as discussed in the context of the accomplice testimony instruction above, Defendant's argument fails because of invited error. *See State v. Hamilton*, 2003 UT 22, ¶ 55, 70 P.3d 111 (applying invited error where trial counsel confirmed on the record that the defendant had no objection to the jury instructions given by the trial court); *State v. Malaga*, 2006 UT App 103, ¶ 8, 132 P.3d 703 (same). We therefore reject Defendant's claim that the trial court plainly erred by failing to give a jury instruction defining the in concert element of the group criminal activity enhancement.

## IV. Shackling of Defendant During Delivery of Verdict

¶ 33 Defendant contends that trial counsel provided ineffective assistance by failing to object and by passively acquiescing to the shackling of Defendant during the delivery of the verdict and polling of the jury. Defendant must show that trial counsel acted deficiently, and that this ineffectiveness caused prejudice. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. However, "ineffective assistance of counsel claims may be defeated upon a finding by the court that either prong was not satisfied." *State v. Rojas–Martinez*, 2005 UT 86, ¶ 9, 125 P.3d 930 (citing *Strickland*, 466 U.S. at 687, 697, 104 S.Ct. 2052). Thus, even if we assume trial counsel's failure to object to the shackling constituted deficient performance, Defendant must still show prejudice to prevail. No such prejudice exists here.

¶ 34 To succeed on his claim of prejudice, Defendant must show he "was prejudiced such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different. A reasonable probability is that which is sufficient to undermine the confidence in the reliability of the outcome." *State v. Tyler*, 850 P.2d 1250, 1258 (Utah 1993) (quotations, footnote, and citations omitted). Defendant asserts that he was prejudiced because the shackling undermined his "presumption of innocence—and the corollary appearance of innocence—at [a] critical stage of the criminal process." Because the presumption of innocence was corroded, Defendant argues, we may presume prejudice. This is a misstatement of the law. Collateral attacks based on ineffective assistance require a showing of actual prejudice except for the few contexts "where counsel is either totally absent or prevented from assisting the accused during a critical stage of the proceeding." *Kimmelman v. Morrison*, 477 U.S. 365, 381 n. 6, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (distinguishing "actual" ineffective assistance claims from "presumed" ineffective assistance claims).

¶ 35 Thus, under traditional prejudice analysis, we conclude there is not a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Tyler*, 850 P.2d at 1258 (quotations and citations omitted). First, there is no evidence that any of the jurors actually saw Defendant in shackles. Second, and more importantly, Defendant cannot show prejudice because the jury had finished deliberation and reached its verdict prior to reentering the courtroom. At that point, viewing Defendant in shackles could have no prejudicial effect because the jury had already determined that Defendant was guilty on all but one charge.

¶ 36 Defendant also claims that the trial court committed plain error by ordering him shackled during the delivery of the verdict and the polling of the jury. Defendant argues that the error is plainly erroneous because the trial court lacked sufficient justification to order the shackling. However, even if the alleged error occurred, Defendant must show prejudice. *See State v. Cruz*, 2005 UT 45, ¶ 16, 122 P.3d 543. As we have said, no such prejudice occurred. *See State v. Litherland*, 2000 UT 76, ¶ 31 n. 14, 12 P.3d

92; *State v. Verde*, 770 P.2d 116, 124 n. 15 (Utah 1989) (stating that there is a "common standard" for determining prejudice in claims of plain error and ineffective assistance of counsel). Therefore, Defendant cannot show prejudice, and his plain error claim fails.

## V. Dangerous Weapon Enhancement

¶ 37 Defendant claims that trial counsel rendered ineffective assistance by failing to challenge the constitutionality of the dangerous weapon enhancement statute. Utah Code section 76-3-203.8 provides for increased prison terms "[i]f the trier of fact finds beyond a reasonable doubt that a dangerous weapon was used in the commission or furtherance of a felony." Utah Code Ann. § 76-3-203.8(2). Defendant argues that the dangerous weapon enhancement violates the double jeopardy clause of both the United States and Utah Constitutions. *See* U.S. Const. amend. V; Utah Const. art. I, § 12. According to Defendant, the dangerous weapon enhancement, *see* Utah Code Ann. § 76-3-203.8, and the aggravated burglary and robbery statutes, *see id.* §§ 76-6-203, -302, punish him twice for a single act—the use of a dangerous weapon in the commission of his crimes—in violation of his right against double jeopardy. We disagree.

¶ 38 The determination of whether trial counsel performed deficiently hinges on whether reasonable counsel would have challenged the constitutionality of the dangerous weapon enhancement at trial. Defendant suggests that the constitutionality of the dangerous weapon enhancement was unresolved at the time of trial, which warranted an objection from trial counsel. We disagree. "To establish a claim of ineffectiveness based on an oversight or misreading of the law, a defendant bears the burden of demonstrating why, on the basis of the law in effect at the time of trial, his or her trial counsel's performance was deficient." *State v. Dunn*, 850 P.2d 1201, 1228 (Utah 1993). In essence, Defendant must show that the law at the time of trial was sufficiently ambiguous or unsettled to warrant an objection by trial counsel, and that the failure to make such an objection fell below "the wide range of reasonable professional assistance." *State v.*

*Bryant,* 965 P.2d 539, 542 (Utah Ct.App. 1998).

¶ 39 "The double jeopardy provisions in both the United States and Utah constitutions generally prohibit the State from making repeated attempts to convict an individual for the same offense after jeopardy has attached...." *State v. Harris,* 2004 UT 103, ¶ 22, 104 P.3d 1250 (footnotes omitted). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) (addressing Fifth Amendment double jeopardy claims). Indeed, in *Hunter,* the United States Supreme Court determined that dangerous weapon enhancement statutes do not violate the Fifth Amendment's prohibition on double jeopardy if the legislature specifically authorized cumulative punishment for a crime committed with a dangerous weapon. *See id.* (stating "where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments *in the absence of a clear indication of contrary legislative intent*" (quoting *Whalen v. United States,* 445 U.S. 684, 692, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980))). As a result, the current dangerous weapon enhancement statute does not violate the Fifth Amendment if the legislature intended to impose cumulative punishments for felonies committed with a dangerous weapon.

¶ 40 Applying the above principles to the statute in question here, we determine that the dangerous weapon enhancement statute does not violate Defendant's right against double jeopardy. *Hunter* requires us to consider whether the legislature intended for the dangerous weapon enhancement to impose cumulative punishments. *See id.* We determine that the legislature did so intend. " '[W]here the statutory language is plain and unambiguous, we do not look beyond the language's plain meaning to divine legislative intent.' " *State v. Kenison,* 2000 UT App 322, ¶ 10, 14 P.3d 129 (quoting *State v. Tryba,* 2000 UT App 230, ¶ 13, 8 P.3d 274). Therefore, " '[o]nly when we find am-

biguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations.' " *Id.* (quoting *Nelson v. Salt Lake County,* 905 P.2d 872, 875 (Utah 1995)). The plain language of section 76–3–203.8 states that "[i]f the trier of fact finds beyond a reasonable doubt that a dangerous weapon was used in the commission or furtherance of a felony, the court ... shall increase by one year the minimum term of the sentence applicable by law." Utah Code Ann. § 76–3–203.8(2). We believe this language unambiguously states that the legislature intended to make it mandatory for trial courts to increase prison terms where the jury determined beyond a reasonable doubt that the defendant used a dangerous weapon while committing a felony. As a result, the dangerous weapon enhancement statute complies with the requirements of *Hunter* and does not violate the Fifth Amendment.

¶ 41 The legislative history of the dangerous weapon enhancement statute also supports our holding. Even if the plain language of the statute were ambiguous, the legislative history demonstrates that the legislature clearly intended to increase the punishment for felonies committed with a dangerous weapon. Although the comments of a single legislator do not necessarily control our decision, during the floor debates of the bill amending the statute from a firearms enhancement to a dangerous weapon enhancement, the bill's sponsor, Representative Bresnahan, stated, "This broadens the ability of our law enforcement people to deal with the ever-increasing problem of violent crime. This gives us the type of legislation that we have all talked about in getting tougher on violent criminals." Floor Debate on H.B. 185, 49th Leg., Gen. Sess. (Utah Feb. 28, 1995) (statement of Rep. Bresnahan). Thus, according to the legislator who authored the bill creating the dangerous weapon enhancement, the purpose of the legislation was to assist law enforcement and "get[ ] tougher on violent criminals" by increasing prison terms. *Id.* The comments of Representative Bresnahan respecting the dangerous weapon enhancement is further evidence of a legislative intent to authorize cumulative punishment

for a single act.[4] The enhancement is, therefore, constitutional.

■ ¶ 42 We likewise determine that the dangerous weapon enhancement does not violate the Utah Constitution's prohibition against double jeopardy. *See* Utah Const. art. I, § 12 (stating that no person "shall ... be twice put in jeopardy for the same offense."). Although the Utah Constitution's double jeopardy clause has been interpreted differently than the Fifth Amendment's double jeopardy clause, we can find no authority distinguishing Utah law from federal law respecting cumulative sentences. On the other hand, the Utah Supreme Court has already addressed whether a firearm enhancement statute, which imposed cumulative punishment on crimes committed with firearms, violated double jeopardy. In *State v. Angus*, 581 P.2d 992 (Utah 1978), the court determined that it was within the "prerogative of the legislature" to "increase the degree of crime where instruments of violence, such as explosives or firearms" were used. *Id.* at 994. As such, the *Angus* court determined that a former firearm enhancement statute, *see* Utah Code Ann. § 76–3–203 (1978) (amended 2003), did not violate double jeopardy. *See Angus*, 581 P.2d at 995. We reach the same conclusion with the current dangerous weapon enhancement statute.

Section 76–3–203.8 does not violate double jeopardy.[5]

■ ¶ 43 Because we hold that Utah Code section 76–3–203.8 is not unconstitutional, we conclude that trial counsel did not perform ineffectively for failing to challenge the enhancement. "[T]rial counsel's '[f]ailure to raise futile objections does not constitute ineffective assistance of counsel.'" *State v. Diaz*, 2002 UT App 288, ¶ 39, 55 P.3d 1131 (second alteration in original) (quoting *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546).[6] Since both prongs of *Strickland* must be satisfied, *see State v. Litherland*, 2000 UT 76, ¶ 29, 12 P.3d 92, we need not reach the prejudice prong, and Defendant's ineffective assistance claim fails.

■ ¶ 44 Defendant also claims that we may review the unpreserved issue of the constitutionality of the dangerous weapon enhancement under the exceptional circumstances doctrine. "'[E]xceptional circumstances' is a concept that is used sparingly, properly reserved for truly exceptional situations, for cases ... involving 'rare procedural anomalies.'" *State v. Irwin*, 924 P.2d 5, 11 (Utah Ct.App.1996) (quoting *State v. Dunn*, 850 P.2d 1201, 1209 n. 3 (Utah 1993)). This case is not an anomaly. *Cf. id.* (stating that failure to object to improper remarks by prosecutor during trial did not constitute ex-

---

4. Defendant claims that the Utah Supreme Court's comment in *State v. Montiel*, 2005 UT 48, 122 P.3d 571, about the unsettled nature of the law regarding the dangerous weapon enhancement statute, *see* Utah Code Ann. § 76–3–203.8 (Supp.2006), indicates some ambiguity in the statute's legislative intent. *See Montiel*, 2005 UT 48 at ¶ 2 n. 2, 122 P.3d 571. We disagree. Not only can the legislative intent be gleaned from the plain language of the statute, but also the statements during the floor debate on the bill support that intent. *See* Floor Debate on H.B. 185, 49th Leg., Gen. Sess. (Utah Feb. 28, 1995) (statement of Rep. Bresnahan).

5. Defendant urges us to adopt the analysis of the Montana Supreme Court in *State v. Guillaume*, 293 Mont. 224, 975 P.2d 312 (1999), and rule that the dangerous weapon enhancement violates the right against double jeopardy. *See id.* at 316. Not only is *Guillaume* not binding on this court, but we also reject its rationale in favor of *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673 (1983), and its progeny. *See also State v. Rodriguez*, 822 A.2d 894, 908 n. 16 (R.I.2003) (rejecting *Guillaume* and its reasoning).

6. We distinguish *State v. Ison*, 2006 UT 26, 135 P.3d 864, which determined that defense counsel rendered ineffective assistance for failing to seek admission of a document under rule 803(8)(c) of the Utah Rules of Evidence. *See id.* at ¶ 32; *see also* Utah R. Evid 803(8)(c). There, the court rejected the claim that counsel was not ineffective for failing to seek admission of the document on the grounds that its admissibility was an "open question in [Utah] courts." *Ison*, 2006 UT 26 at ¶ 32, 135 P.3d 864. The court concluded that no strategic reason existed for failing to seek admission of the document, and held that counsel performed ineffectively. *See id.* Here, on the other hand, we do not have an "open question" of law. *Id.* The cases governing double jeopardy in Utah are well settled. *See Hunter*, 459 U.S. at 366, 103 S.Ct. 673; *State v. Maguire*, 1999 UT App 45, ¶ 11 n. 3, 975 P.2d 476 (citing *Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432 (1980)); *State v. Angus*, 581 P.2d 992, 995 (Utah 1978).

ceptional circumstances). Furthermore, the exceptional circumstances doctrine is "reserv[ed] for the most unusual circumstances where our failure to consider an issue that was not properly preserved for appeal would have resulted in manifest injustice." *State v. Nelson–Waggoner*, 2004 UT 29, ¶ 23, 94 P.3d 186. We see no indications of manifest injustice here and therefore decline to review Defendant's claim under exceptional circumstances.

## VI. Potential Effect of Teardrop Tattoo on Jury

■ ¶ 45 Defendant argues that trial counsel was ineffective for failing to address the potential for bias and prejudice caused by Defendant's teardrop tattoo located just beneath his eye. Defendant argues that he was deprived of "reasonable professional assistance," *State v. Bryant*, 965 P.2d 539, 542 (Utah Ct.App.1998) (quotations and citation omitted), because trial counsel failed to seek voir dire regarding perceived meanings of teardrop tattoos or request a cautionary instruction from the court to lessen the prejudicial impact of the tattoo. We disagree. Once Juror Thirty–One stated that he or she had a preconceived notion about the tattoo, the prosecution requested that the juror be questioned in chambers. While in chambers, Defendant's trial counsel asked Juror Thirty–One about the tattoo. Juror Thirty–One stated that he or she believed a teardrop tattoo signified a criminal history or gang affiliation, but did not know if Defendant had a criminal history or was affiliated with a street gang. Trial counsel then moved for the removal of Juror Thirty–One for cause, which motion the trial court granted. Thus, trial counsel questioned and subsequently moved for the removal of the only juror expressing any concerns about Defendant's teardrop tattoo. Such conduct meets the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Holbert*,

2002 UT App 426, ¶ 54, 61 P.3d 291 (quotations and citation omitted).[7] Therefore, trial counsel did not perform ineffectively for failing to request a cautionary instruction, or voir dire the jury, regarding the implications of Defendant's teardrop tattoo.

¶ 46 Defendant has also failed to show any prejudice resulting from trial counsel's allegedly ineffective performance. "To demonstrate prejudice, '[D]efendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Holbert*, 2002 UT App 426 at ¶ 55, 61 P.3d 291 (alteration in original) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052 (1984)). The record provides no evidence that any of the empaneled jurors harbored prejudice toward Defendant due to his teardrop tattoo. Defendant's claim that Internet searches reveal widespread knowledge of the significance of a teardrop tattoo has no application here. As a result, Defendant has not established the necessary element of prejudice, and we reject his ineffective assistance of counsel claim.

## VII. Consecutive Sentencing

■ ¶ 47 Defendant challenges the trial court's decision that his sentences should run consecutively. Under Utah Code section 76–3–401, when "a defendant has been adjudged guilty of more than one felony offense" the court "shall determine" whether to impose concurrent or consecutive sentences. Utah Code Ann. § 76–3–401(1). The court's decision to impose concurrent or consecutive sentences must be based on enumerated factors, specifically "the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of the defendant." *Id.* § –401(2). Defendant alleges that the trial judge violated his due process rights by improperly basing the sen-

7. Trial counsel's failure to inquire further about the teardrop tattoo through voir dire, or to request a cautionary instruction, may also have constituted sound trial strategy because trial counsel relied on the tattoo during trial to attack the reliability of one of the victim's identification of Defendant. *See, e.g., State v. Harper*, 2006 UT App 178, ¶¶ 24–25, 136 P.3d 1261 (determining that trial counsel's decision not to request a mistrial, move to strike testimony, or ask for curative instruction in response to unanticipated testimony constituted sound trial strategy because such tactics may have drawn undue attention to the unanticipated testimony).

tencing decision on bias, anger, and information not in the record. We disagree.

 ¶ 48 Defendant claims the trial court erred by mentioning Defendant's race and nationality during the sentencing hearing. Further, Defendant claims the trial court's sentencing decision was motivated by anger and the desire to retaliate against Defendant for his outburst of insults and threats. We review Defendant's challenge under plain error because Defendant failed to preserve his argument below. *See State v. Tueller*, 2001 UT App 317, ¶ 9, 37 P.3d 1180 ("Having failed to properly preserve the issue of judicial bias for our review, Defendant must show either 'plain error' or 'exceptional circumstances' before we can review the issue."). To succeed under plain error, Defendant must show that an error occurred, that the error should have been obvious to the trial court, and that the error was harmful. *See id.; Dunn*, 850 P.2d at 1208–09.

 ¶ 49 Defendant asserts that the error was plain because "[a] sentence must be based only upon information in the record before [the court], not upon anger or bias." Although this is a correct statement of the law, we do not believe plain error occurred below. Defendant has failed to demonstrate that the trial court was actually motivated by bias in its sentencing determination. We "'afford[ ] the trial court wide latitude and discretion in sentencing.'" *State v. Helms*, 2002 UT 12, ¶ 8, 40 P.3d 626 (quoting *State v. Woodland*, 945 P.2d 665, 671 (Utah 1997)). "A trial court abuses its discretion in sentencing when, among other things, it fails to consider all legally relevant factors." *Id.* (quotations and citation omitted). Further, "sentencing reflects the personal judgment of the court, and consequently, a sentence imposed by the trial court should be overturned only when it is inherently unfair or clearly

excessive." *Id.* at ¶ 14. Such circumstances are not present here.[8] If it was improper for the trial judge to discuss Defendant's Iraqi heritage prior to sentencing, it does not follow that such comments show bias or otherwise taint the sentencing process.

¶ 50 Moreover, any alleged error did not cause Defendant prejudice because the trial judge based his sentencing decision upon the factors enumerated in the statute. The trial judge commented on the "gravity and circumstances of the offenses," Utah Code Ann. § 76–3–401(2), by explaining that Defendant "prey[ed] on people that [were] minding their own business" and committed "[r]andom acts of violence." The trial judge explained the method of the robberies—"[t]hey pull up and point a gun at him and demand his money." The trial judge noted that during trial he learned about "the trauma the victims went through." Moreover, the trial judge addressed the "number of victims," *id.*, by reiterating some of the details of Defendant's crimes.[9]

¶ 51 The record also indicates that the trial judge considered "the history, character, and rehabilitative needs of the defendant" as required by the sentencing statute. *Id.* The trial judge noted that Defendant had "been involved in the criminal justice system since [he] was very young." The trial judge stated that the Board of Pardons should not parole Defendant because "he will do this again," and made clear that Defendant "deserves to be in prison for a long, long time." The trial judge also noted that Defendant had a bad attitude, as evidenced by the diatribe of threats and obscenities spoken by Defendant, and by his refusal to admit any wrongdoing or show remorse for his crimes. In sum, the trial judge considered all of the statutory factors during the sentencing hearing. *See id.* Because these factors weigh heavily in

8. Indeed, at oral argument, Defendant's counsel conceded that Defendant's sentence did not violate the relevant statutory sentencing guidelines. *See* Utah Code Ann. § 76–3–401(6)(b) (2003) (stating that aggregate maximum of thirty-year sentence does not apply to cases where life imprisonment is authorized).

9. The trial judge stated that Defendant and his accomplices

robbed a store where a lady was trying to make a new store work, in the middle of the night. They took advantage of a widow in the Cove area, who went out ... to try and give assistance, and they terrorized her. A man coming home, unloading his baggage in his home, they robbed. A young woman walking down the street, who was out of gas, in the night, coming home from work, they attempted to rob her.

favor of consecutive sentencing, Defendant has failed to demonstrate any prejudice resulting from the alleged errors. We affirm the trial court's sentencing order.

## VIII. Cumulative Error

¶ 52 Finally, Defendant contends that the combination of the trial court's errors constitutes cumulative error.

> Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence ... that a fair trial was had. If the claims are found on appeal to not constitute error, or the errors are found to be so minor as to result in no harm, the doctrine will not be applied.

*State v. Gonzales,* 2005 UT 72, ¶ 74, 125 P.3d 878 (omission in original) (quotations and citations omitted). As the foregoing analysis indicates, Defendant has not established that any errors occurred or that any of the alleged errors resulted in prejudice. As a result, the cumulative error doctrine is inapplicable. *See id.*

## CONCLUSION

¶ 53 Defendant failed to show that trial counsel rendered ineffective assistance with respect to: (1) counsel's failure to explore the potential bias of Juror Ten, (2) counsel's decision not to request a cautionary instruction on the reliability of accomplice testimony, (3) counsel's failure to request a jury instruction defining the group criminal activity element, (4) counsel's acquiescence to the shackling of Defendant, (5) counsel's failure to object to the imposition of the dangerous weapon enhancement, and (6) counsel's failure to address the potential bias to the jury pool resulting from Defendant's teardrop tattoo. Likewise, we hold that no plain error occurred with respect to: (1) the alleged bias of Juror Ten, (2) the lack of an accomplice testimony cautionary instruction, (3) the lack of an in concert instruction, (4) the shackling of Defendant, and (5) the imposition of consecutive sentences. We also decline to review Defendant's double jeopardy claim under exceptional circumstances. Finally, the cumulative error doctrine is inapplicable. We therefore affirm Defendant's convictions of aggravated robbery and aggravated burglary, as well as the trial court's order that the sentences run consecutively.

¶ 54 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge and WILLIAM A. THORNE JR., Judge.